JAMES D. MOONEY AND IDA MAY MOONEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11205.  Promulgated October 20, 1947.

*Raymond F. Garrity, Esq.*, for the petitioners.
*Sheldon V. Ekman, Esq.*, for the respondent.

716

OPINION.

Disney, *Judge*: The only difference between the parties is as to when the services were performed, for which the petitioner received bonus payments in 1939. The petitioner's position is that the bonus payments were for services rendered in 1939; therefore, he having been absent from the United States 198 days during that year, 198/365 thereof is exempt from taxation as income from sources without the United States, under sections 116 (a) and 119 (c) (3) of the Internal Revenue Code.[2] The respondent's view is that the payments were for

[2] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such

earnings in 1936, 1937, and 1938, according to awards then made, and that the exclusion from gross income should be limited in accordance with petitioner's absences from the United States during those years, i. e., to 51/365, 48/365, and 193/365, respectively. The parties have agreed that the $10,691.05, first installment of 1938 bonus, delivered April 10, 1938, was attributable to services rendered in 1938, and that on such amount the exclusion is on the basis of 193/365. On brief the respondent agrees that since the petitioner was absent from the United States more than six months in 1939, "there is therefore no question but that he is entitled to some exclusion with respect to the bonus installments."

The petitioner relies strongly on I. T. 1891, C. B. III–1 (1924), p. 132, which he believes to be based upon the General Motors Corporation bonus plan at that time, and which does discuss facts closely parallel to, if not the same, as those of the General Motors bonus plan then current. We do not, however, base our conclusions herein upon I. T. 1891, for two reasons: First, because such office decisions are not controlling, and, second, because the present question was not the subject of that office decision, the point there being as to when the corporation should take deductions for the amounts credited to employees' accounts by the bonus custodian, and whether dividends paid to the employee prior to delivery of bonus stock were additional compensation to the employee and, therefore, deductible as such by the employer.

The petitioner, to show interpretation of the bonus plan by the corporate officials, also relies on various expressions in a "Notice and Proxy Statement" issued April 21, 1947, by General Motors Corporation, which was admitted with the qualification that findings might not be made thereon. No findings have been made thereon and our conclusions here do not rest upon such instrument, for the reason that it is considered not to be within the "Federal Shop Book Rule," set forth in section 695 of 28 U. S. C. A., providing, in sum, that writings or records made as memoranda or record of an act or transaction shall be admissible if made in the regular course of business, and provided that it was regular course of such business to make the memorandum at that time. In our view, the matters of opinion and interpretation

---

amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

\* \* \* \* \* \* \*

(c) GROSS INCOME FROM SOURCES WITHOUT UNITED STATES.—The following items of gross income shall be treated as income from sources without the United States:

\* \* \* \* \* \* \*

(3) Compensation for labor or personal services performed without the United States. [Under Regulations 103, sec. 19.119–4, if compensation is received for labor or services performed partly within and partly without the United States, the portion thereof to be included in income is the proportion that the number of days spent in the United States bears to the year.]

which petitioner seeks to show from the "Notice and Proxy Statement" are not such matters as to be within the intent of the statute. Moreover, they were made after filing of this case and shortly prior to trial, and by a corporation having such privity of interest with the petitioner as, in our view, deprives them of weight in this matter.

We therefore proceed to the problem before us, on the facts found, including, the bonus plan in effect in the years involved: Shall we allow exclusion from income received in 1939 on the basis of foreign residence in that year, or in earlier years? The problem is one beset with difficulty, and appealing argument is made for both views. After much examination of the arguments adduced and study of the question, we have come to the conclusion that the better solution is that the exclusion from income for 1939 should be on the basis of 198/365, representing the petitioner's absence from the United States in that year. As presented to us by the parties, the question is merely one as to the year of earning. Though considering the general reasons underlying the bonus plan, put into effect for the benefit of employees who "have contributed in a special degree to the success of the corporation by their inventions, ability, industry and loyalty or exceptional service," we can see that there might have been logic in ascribing the bonus to all of an employee's years of service. That·thought is not suggested, perhaps because previous employment was not required in the plan. The respondent urges, as year of. earning, the year of declaration of bonus; the petitioner urges the year for which it is actually received under the bonus plan. In our view, the latter is correct. It associates, ratably, the earning of and the receipt of the bonus. To relate the earning of the bonus to the entire period of service of an employee appears impracticable. To ascribe its earning merely to the year when it is declared and agreed upon appears contrary to the basic reason therefor, as just above quoted. The employee's special contributions of invention, or industry, ability, loyalty, or exceptional service may not reasonably be seen as ascertained over a period of only one year. We think a fair and administrable interpretation of the plan is that the reward goes to the employee in general upon a four-year basis, and that he earns it over a period of four years; therefore, that he earned the amounts involved herein in 1939. He was credited with the bonus (except the first quarter) ratably, monthly, over the four-year period. He received it in full only if he continued to serve four years, and in general, if he ceased earlier to be employed he received the portion, and only the portion, based upon the time of employment, out of a four-year period. It would be difficult to imagine anything more soundly indicative of causal relation between earning and receipt of bonus. That, in case of the employee's death, the entire four-year bonus would be paid to

his estate, does not to us appear to indicate otherwise, for in such case the employee is seen as earning the bonus prior to death. Since that special privilege might accrue to the estate of any employee, it was fair to all, not discriminatory. That in case of dismissal without fault of employee he *might* still share in the bonus, to such extent, if any, as the executive committee might determine, is an element so dependent upon the company's discretion as to afford, in our view, no help in this problem. No such *right* was possessed by the employee.

The respondent urges that the bonus was earned in the year set up, because the stock certificates then delivered to, and held by, a custodian, enabled the employee to receive the dividends and gave him all other rights to the stock, except that of alienation; also, that the custodian held an irrevocable power of attorney to retransfer the stock, if undelivered; and that prior earning of the stock is thus demonstrated. We think so much weight to such facts is not justified, and that they fail to show complete ownership. "Free from all restrictions" is the description of stock when delivered; therefore, prior to delivery, it was restricted, and when we consider the systematic crediting to the employee, month by month, while he continues employed, we can not escape the conclusion that, so long as he is employed (up to four years), the stock is not his, but is becoming his by virtue of such employment; in other words, is being earned. That the stock had been transferred, and would require retransfer, if the employee left the service, does not, in our view, indicate more than mechanics of the bonus plan, which resulted, altogether, only in restricted rights in the employee prior to completion of the contemplated period of service. Prior to that time, it could not truly be said that the stock belonged to the employee, or had been earned by him, and, indeed, the respondent on brief specifically admits that title to the stock did not pass to the petitioner before 1939, and accordingly that he could not be taxed thereon until 1939, and the corporation could not accrue the deduction until 1939. This being so, and employment being, in general, prerequisite to acquisition of unrestricted title, it appears to us that such title was being earned through the four-year period. Had the stock been completely earned in the year when set aside with the custodian, as respondent thinks, it would seem to follow that the employee and company should have been required to treat it as earned income, and report accordingly, the employee his earned income, the employer its deductions. The answer made is, of course, that there was no delivery; but the only reason for nondelivery clearly lies in the requirement of future service, which means further earning, and is not explained by mere delay in delivery, after earning. There is not mere delay, but delay plus rendition of the services necessary to continue employment. These must be satisfactory, otherwise employment and

further participation in bonus would end. A realistic view does not permit any conclusion that the quality of the service was altogether immaterial, and only time important, so that there was no further earning, for without service worth paying for there would reasonably be no continued employment. We can not, in the light of the intent of the bonus plan, conclude that the stock was paid merely for one year's service, earned in the year when the bonus was determined upon.

That the future was a real factor in the plan is indicated by the original notice of stockholders' meeting, stating in pertinent part that it was hoped "thereby," that is, by the bonus plan, "not only to compensate services rendered, but also to encourage *further* efforts by making its employees partners in the corporation's prosperity." (Italics supplied.) We think this means, under all the facts involved here, that the bonus plan was compensation for service, including *further*, that is, later, efforts and services, over the period of four years provided for, if the services continued so long (except in case of death and, within the corporation's discretion, in case of dismissal without cause). Only employees who had been such since January 1 of the first year seem included, which demonstrates that earlier *past* services were not essential, and considering that year, and the three years during which the employees would, it was hoped, be "partners" with the corporation, we have a four-year period. Throughout that period they were to be paid. In our opinion, the plan meant to "compensate services rendered" during that four years, and not merely during one.

We conclude and hold that the petitioner earned in 1939 the bonus payments received in 1939 (except the $10,691.05 stipulated otherwise), and that 198/365 of the income is to be excluded from taxation as from sources outside the United States.

*Decision will be entered under Rule 50.*